UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-60064-STRAUSS

**JASON BARNETT,**

    Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.
_____/

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment/Initial Brief ("Plaintiff's Motion") [DE 11] and Defendant's Motion for Summary Judgment ("Defendant's Motion") [DE 12]. I have reviewed both motions, Plaintiff's Reply Brief [DE 13], and all other pertinent portions of the record. For the reasons discussed herein, Plaintiff's Motion [DE 11] will be **DENIED** and Defendant's Motion [DE 12] will be **GRANTED**.

### I.    BACKGROUND & PROCEDURAL HISTORY

On February 11, 2022, Plaintiff applied for disability insurance benefits ("DIB"), and on February 15, 2022, he applied for supplemental security income ("SSI"). Tr. 11, 95, 106, 117, 127, 246-65. In his applications, he alleged a disability onset date of June 12, 2019 ("Alleged Onset Date" or "AOD"). *Id.* Plaintiff's DIB and SSI claims were denied initially and upon reconsideration. Tr. 11, 95-136. Thereafter, on April 16, 2024, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"); a vocational expert ("VE") also appeared and testified at the hearing. Tr. 35-89. On July 31, 2024, the ALJ issued her decision, finding that Plaintiff was not disabled under the Social Security Act (from the AOD through the

date of the ALJ's decision). Tr. 11-27. On November 15, 2024, the Appeals Council denied Plaintiff's request for review, thereby leaving the ALJ's decision as the final decision of the Commissioner. Tr. 1-3. Consequently, on January 10, 2025, Plaintiff filed this action seeking judicial review of the Commissioner's decision.

## II.     STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, a court's role is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). It "is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Id.* (quoting *Phillips*, 357 F.3d at 1240 n.8); *Bloodsworth*, 703 F.2d at 1239. In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III.  DISCUSSION

### A. THE SEQUENTIAL EVALUATION

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In making a disability determination, "the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history." *Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, 262-63 (11th Cir. 2008) (quoting *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)); *see also Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. §§ 404.1520 and 416.920.[1] This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment." An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If no severe impairment is found, then the ALJ will

---

[1] 20 C.F.R. Part 404 governs DIB claims, and 20 C.F.R. Part 416 governs SSI claims. However, the regulations for both parts – at least insofar as they apply in this case – are "essentially the same." *Theil v. Comm'r, Soc. Sec. Admin.*, No. 24-11615, 2025 WL 707863, at *1 n.1 (11th Cir. Mar. 5, 2025) (quoting *Bowen v. City of New York*, 476 U.S. 467, 470 (1986)).

3

conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the ALJ will find the claimant disabled without considering age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  The Regulations define RFC as "the most you can still do despite your limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  This determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work.  If so, the claimant is found not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five.  "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'"  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs.  *Id.*  At this fifth and final step, the ALJ must resolve whether the claimant is

actually capable of performing other work. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c).

## B. ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION

After considering the evidence, the ALJ found that Plaintiff was not disabled between the AOD and the date of the ALJ's decision. *See* Tr. 11-27. Initially, the ALJ addressed certain preliminary issues and outlined in detail the five steps of the sequential evaluation. Tr. 11-13. Then, addressing the first step in the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the AOD. Tr. 13.

At step two, the ALJ found that Plaintiff had the severe impairments of right shoulder dysfunction, unspecified schizophrenia spectrum disorder, unspecified anxiety disorder, PTSD, and substance use disorder. Tr. 14. Next, at step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 15-17.

The ALJ next assessed Plaintiff's RFC, determining based on her consideration of the entire record that Plaintiff has the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can frequently climb ramps and stairs and occasionally climb ladders, ropes, or scaffolds and has no other postural limits; reaching in front is limited to frequent on right, only; he must avoid concentrated exposure to noise and vibration; he can sustain attention and concentration for completion of simple and routine tasks; he can have occasional interaction with general public and supervisors.

Tr. 17. After assessing Plaintiff's RFC, the ALJ found that Plaintiff is unable to perform his past relevant work. Tr. 25.

Therefore, the ALJ considered Plaintiff's age, education, work experience, and RFC to determine whether a significant number of jobs, that Plaintiff could perform, exist in the national economy. Tr. 25-27. Relying on the VE's testimony, the ALJ determined that Plaintiff is able to

5

perform the requirements of jobs such as industrial cleaner, laundry worker, and dishwasher. Tr. 26. As a result, the ALJ concluded that Plaintiff is capable of making a successful adjustment to other work existing in significant numbers in the national economy. Tr. 26-27. In light of this conclusion, the ALJ found that Plaintiff is not disabled. Tr. 27.

### C. ANALYSIS

In his motion, Plaintiff argues that reversal is warranted for two independent reasons. First, Plaintiff contends that the ALJ erred by failing to evaluate the purported medical opinion of Jose Garcon, Psy.D. (who performed a psychological consultative evaluation of Plaintiff, *see* Tr. 421-25) in accordance with 20 C.F.R. §§ 404.1520c and 416.920c, the regulations governing the SSA's consideration of medical opinions. Second, Plaintiff contends that the ALJ erred at step five of the sequential evaluation by failing to resolve an apparent conflict between the VE's testimony and the DOT. As discussed herein, neither argument establishes a basis for reversal.

#### 1. Dr. Garcon

The resolution of Plaintiff's argument regarding Dr. Garcon turns on whether Dr. Garcon provided a "medical opinion," a term that is defined under 20 C.F.R. §§ 404.1513(a)(2) and 416.913(a)(2). As set forth in those regulations, a "medical opinion" is defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in certain abilities (e.g., the abilities to perform physical and mental demands of work activities). 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). When medical opinions are part of the record, the ALJ must evaluate those opinions in accordance with 20 C.F.R. §§ 404.1520c and 416.920c. Those regulations require the ALJ to, among other things, articulate how persuasive the ALJ finds the medical opinions to be. 20 C.F.R. §§ 404.1520c(b) and 416.920c(b).

6

Here, although the ALJ discussed Dr. Garcon's consultative psychological evaluation at length, *see* Tr. 14-16, 22-24, the ALJ did not address the persuasiveness of any of Dr. Garcon's statements or treat any of Dr. Garcon's statements as "medical opinions" – and Defendant does not argue that the ALJ did. Rather, Defendant contends that none of Dr. Garcon's statements qualify as "medical opinions." I agree that the ALJ was not required to evaluate Dr. Garcon's statements as "medical opinions."

As set forth in Dr. Garcon's report, Plaintiff was referred to Dr. Garcon for a General Clinical Evaluation with Mental Status. Tr. 421. Plaintiff contends several of Dr. Garcon's statements qualify as a "medical opinion." Specifically, Plaintiff asserts that:

> Dr. Garcon reported that Mr. Barnett had the following nonexertional limitations: (1) "difficulties with sustaining his attention," (2) "insight and judgment seems limited," (3) "impulse control seemed poor," (4) "though[t] process was sometimes tangential," (5) "thought content was generally paranoid and blaming," (6) "difficulty presenting information sequentially due to his disorganized thoughts," (7) "possible psychotic symptomatology," (8) "mood and affective symptoms . . . are likely to hinder his ability to obtain and sustain meaningful employment," and (9) "he displayed hallucinatory and delusional ideations."

[DE 13] at 2 (citing Tr. 422-24).

The regulations provide that "[a] medical opinion is a statement from a medical source about what you can still do despite your impairment(s) *and* whether you have one or more impairment-related limitations or restrictions in" certain abilities. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (emphasis added). Such abilities include (as relevant here) the "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." 20 C.F.R. §§ 404.1513(a)(2)(ii), 416.913(a)(2)(i)(B); *see also Theil*, 2025 WL 707863, at *2; *Watson v. Comm'r of Soc. Sec.*, No. 24-10668, 2025 WL 274903, at *3 (11th Cir. Jan. 23, 2025); *Gregory v. Comm'r, Soc. Sec. Admin.*,

7

No. 21-14103, 2023 WL 4542674, at *8 n.9 (11th Cir. July 14, 2023). "*In contrast*, 'other medical evidence' is 'evidence from a medical source *that is not objective medical evidence or a medical opinion*, including judgments about the nature and severity of the claimant's impairments, the claimant's medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis.'" *Ball v. Soc. Sec. Admin., Comm'r*, No. 24-12496, 2025 WL 1010204, at *2 (11th Cir. Apr. 4, 2025) (quoting 20 C.F.R. § 416.913(a)(3)) (emphasis added) (alterations adopted). "Mere diagnostic statements or 'judgments about the nature and severity of . . . impairments' are not 'medical opinions.'" *Austin v. Kijakazi*, 52 F.4th 723, 729 n.3 (8th Cir. 2022).

Significantly, as the Tenth Circuit has explained, "the current definition of a medical opinion requires 'a statement from a medical source' about *both* 'what the claimant can still do despite her impairment(s)' *and* 'whether she has one or more impairment-related limitations or restrictions in specified abilities.'" *Staheli v. Comm'r, SSA*, 84 F.4th 901, 906 n.2 (10th Cir. 2023) (quoting 20 C.F.R. § 404.1513(a)(2)) (emphasis in original) (alterations adopted).[2] While the Eleventh Circuit does not appear to have issued a published decision yet that wrestles with the current definition of "medical opinion" (a definition that only applies to claims filed since March 27, 2017), it appears to have at least implicitly endorsed a view in an unpublished decision that is consistent with the Tenth Circuit's determination that a medical opinion must address *both*

---

[2] The Seventh Circuit recently issued a published a decision that conflicts with the Tenth Circuit's decision in *Staheli*. *See Jones v. Dudek*, 134 F.4th 991, 996-97 (7th Cir. 2025). In *Jones*, the Seventh Circuit disagreed with the Tenth Circuit's determination that a medical opinion must address "*both* 'what the claimant can still do despite her impairment(s)' *and* 'whether she has one or more impairment-related limitations or restrictions in specified abilities.'" *Staheli*, 84 F.4th at 906 n.2. Instead, the Seventh Circuit found that the "medical opinion" definition "sweeps more broadly." *Jones*, 134 F.4th at 997. Having examined both decisions (*Jones* and *Staheli*) and the definition of "medical opinion" in the regulations, I find that the Tenth Circuit's approach in *Staheli* bears more fidelity to the text of the regulations and, therefore, find it more persuasive than the Seventh Circuit's approach in *Jones*. Regardless, Dr. Garcon's statements did not need to be evaluated as medical opinion(s) under either approach for the reasons discussed herein.

8

components (what the claimant can still do *and* whether the claimant has one or more impairment-related limitations in specified abilities to perform demands of work activities). *See Ball v. Soc. Sec. Admin., Comm'r*, No. 24-12496, 2025 WL 1010204, at *3 (11th Cir. Apr. 4, 2025) ("The lifting, pushing, and pulling limitations were not 'medical opinions' because they did not address Ball's ability to perform demands of work 'despite [his] impairment(s).' They addressed activities Ball should not engage in at all, not what he could still do in a work context." (internal citation omitted)); *see also Dye v. Comm'r of Soc. Sec.*, No. 5:20-CV-459-NPM, 2022 WL 970186, at *4 (M.D. Fla. Mar. 31, 2022) ("None of the statements in Downey's letter assess the extent to which Dye can perform any particular function in a work setting, and so they do not constitute 'medical opinions' for purposes of the applicable regulatory regime.").

Here, it is evident that one of Dr. Garcon's statements addresses an issue reserved to the Commissioner and that Dr. Garcon's other statements (considered individually and collectively) are not medical opinions. As a preliminary matter, Dr. Garcon's statement that Plaintiff's symptoms are "likely to hinder his ability to obtain and sustain meaningful employment," Tr. 424, is a statement on an issue reserved to the Commissioner that the ALJ was not required to evaluate. "Statements on issues reserved to the Commissioner" such as statements that a claimant is unable to work or unable to perform regular or continuing work are "inherently neither valuable nor persuasive." 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c). Therefore, ALJs need "not provide any analysis about [they] considered such evidence . . . ." 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c); *see also Watson*, 2025 WL 274903, at *4. Because Dr. Garcon's statement regarding Plaintiff's ability to obtain and sustain employment amounted to a statement that Plaintiff may be unable to work or unable to perform regular and continuing work, the ALJ was not required to provide any analysis regarding how she considered the statement.

As to Dr. Garcon's other statements that Plaintiffs points to, they are not medical opinions both because they do not address what Plaintiff can still do despite his impairments and because they do not address impairment-related limitations or restrictions in the ability to perform mental demands of work activities.  First, regarding Plaintiff's attention, Dr. Garcon did not state or indicate that Plaintiff would have difficulty with sustaining attention in a work setting.  Rather, Dr. Garcon stated, "[u]pon observation, [Plaintiff] *seemed* to have *some* difficulties with sustaining his attention and was *sometimes* distracted." Tr. 423 (emphasis added).  Dr. Garcon's statement, however, says nothing about what Plaintiff can still do despite any impairment.  Moreover, Dr. Garcon merely noted that Plaintiff seemed to have some difficulty sustaining his attention *during* the evaluation.  He did not opine on whether Plaintiff has an impairment-related limitation or restriction in the ability to perform mental demands of work activities.  In fact, Dr. Garcon later noted that the "[r]esults of [Plaintiff's] mental status examination indicate[d] satisfactory or better . . . attention and concentration." Tr. 424.  At any rate, for the foregoing reasons, Dr. Garcon's statement regarding Plaintiff's attention was not a medical opinion.

Regarding the other purported nonexertional limitations that Plaintiff contends Dr. Garcon assessed, Plaintiff appears to primarily pull such statements from two sections of Dr. Garcon's report.  First, in the behavioral observations section of the report, Dr. Garcon stated that, upon observation: "Current insight seemed limited.  Judgment seems limited.  Impulse control seemed poor.  Jason's thought process was sometimes tangential.  Thought content was generally paranoid and blaming.  He reports having had an auditory hallucination once." Tr. 423.  Then, in the summary section of the report, Dr. Garcon stated: "[Plaintiff's] current insight and judgment seem limited and impulse control seemed poor.  [Plaintiff's] thought process was mostly logical but sometimes tangential.  Thought content was sometimes paranoid and blaming.  He displayed

hallucinatory and delusional ideations." Tr. 424. Additionally, in the mental status examination of the report, Dr. Garcon noted that Plaintiff "had difficulty presenting information sequentially due to his disorganized thoughts." Tr. 423. As with Dr. Garcon's observations about Plaintiff's attention *during* Dr. Garcon's evaluation, Dr. Garcon's other statements were limited to observations Dr. Garcon made during his evaluation. Dr. Garcon's statements do not address what Plaintiff can still do despite his impairments, and they do not opine on whether Plaintiff's ability to perform the mental demands of work activities will or may be restricted in a work setting. Thus, Dr. Garcon did not provide a medical opinion. Consequently, the ALJ did not err by not evaluating Dr. Garcon's statements as medical opinions.

### 2. Alleged Apparent Conflict

The ALJ did not fail to identify and resolve an apparent conflict between the VE's testimony and the DOT. No apparent conflict existed here. Under SSR 00-4p, which the SSA is bound to follow, ALJs have "an affirmative duty to identify apparent conflicts and resolve them." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021) (citing *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018)); *see also Morales v. Comm'r of Soc. Sec.*, No. 21-13175, 2023 WL 155213, at *9 (11th Cir. Jan. 11, 2023) ("An ALJ is required to inquire and resolve conflicts only between VE testimony and information in the DOT, including its companion publication, the Selected Characteristics of Occupations (SCO), published by the Department of Labor." (cleaned up)). "This duty is 'not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT.'" *Buckwalter*, 5 F.4th at 1321 (quoting *Washington*, 906 F.3d at 1362). To fulfill his or her duty, the ALJ must: "(1) identify any 'apparent' conflicts, regardless of whether that conflict is brought to the ALJ's attention by the parties or the VE; (2)

explain any discrepancy between the VE's testimony and the DOT; and (3) detail in the decision how that discrepancy was resolved." *Id.* (citing *Washington*, 906 F.3d at 1362). "An ALJ's failure to discharge this duty means a decision is not supported by substantial evidence." *Id.* (citing *Washington*, 906 F.3d at 1362).

"A conflict is apparent if it is 'apparent to an ALJ who has ready access to and a close familiarity with the DOT.'" *Id.* (citing *Washington*, 906 F.3d at 1366). An "apparent conflict" is "more than just a conflict that is made apparent by the express testimony of the VE." *Washington*, 906 F.3d at 1365. "It is a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Id.* "At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id.* In other words, "apparent" means "seeming real or true, but not necessarily so." *Id.* at 1366 (quoting *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015)).

As indicated above, in formulating Plaintiff's RFC, the ALJ found, *inter alia*, that Plaintiff "must avoid concentrated exposure to noise." Tr. 17. When the ALJ asked the VE about jobs that an individual with Plaintiff's RFC and other characteristics could perform, the VE testified that such an individual would be able to perform the jobs of janitor or industrial cleaner, laundry worker, and dishwasher. Tr. 83-84. Based on that testimony, the ALJ concluded that Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 26-27. Consequently, the ALJ found Plaintiff was not disabled. Tr. 27.

Plaintiff contends that an apparent conflict exists based upon the VE's testimony that Plaintiff could perform the aforementioned jobs notwithstanding that Plaintiff must avoid

concentrated exposure to noise.  As Plaintiff notes, Appendix D of the SCO lists the following five noise intensity levels:

| 1 | Very Quiet | isolation booth for hearing test; deep sea diving; forest trail |
| 2 | Quiet | library; many private offices; funeral reception; golf course; art museum |
| 3 | Moderate | business office where typewriters are used; department store; grocery store; light traffic; fast food restaurant at off-hours |
| 4 | Loud | can manufacturing department; large earth-moving equipment; heavy traffic |
| 5 | Very Loud | rock concert—front row; jackhammer in operation; rocket engine testing area during test |

*Stokes v. Astrue*, 274 F. App'x 675, 683 (10th Cir. 2008); *see also* POMS DI 25001.001(A)(50). The three jobs that the VE testified Plaintiff could perform all have a moderate noise level (a noise level of 3).  *See* 1991 WL 673258; 1991 WL 672983; 1991 WL 672752.  According to Plaintiff, the ALJ's determination that Plaintiff must avoid "concentrated exposure" to noise conflicts with the VE's testimony that Plaintiff can perform the three identified jobs, which all have a moderate noise level.  At a minimum, Plaintiff contends that the ALJ's determination that Plaintiff must avoid concentrated exposure to noise is vague and ambiguous.

Plaintiff's argument fails.  Significantly, as reflected in the following snapshot of a portion of Form SSA-4734-BK, a physical RFC assessment form, SSA often uses four categories to rate environmental limitations, including noise limitations.

| F. ENVIRONMENTAL LIMITATIONS<br>☐ None established. (Proceed to Section 2.) | UNLIMITED | AVOID CONCENTRATED EXPOSURE | AVOID MODERATE EXPOSURE | AVOID ALL EXPOSURE |
|---|---|---|---|---|
| 1. Extreme cold | ☐ | ☐ | ☐ | ☐ |
| 2. Extreme heat | ☐ | ☐ | ☐ | ☐ |
| 3. Wetness | ☐ | ☐ | ☐ | ☐ |
| 4. Humidity | ☐ | ☐ | ☐ | ☐ |
| 5. Noise | ☐ | ☐ | ☐ | ☐ |
| 6. Vibration | ☐ | ☐ | ☐ | ☐ |
| 7. Fumes, odors, dust, gases, poor ventilation, etc. | ☐ | ☐ | ☐ | ☐ |
| 8. Hazards (machinery, heights, etc.) | ☐ | ☐ | ☐ | ☐ |

13

As the foregoing demonstrates, a claimant who must avoid *moderate* exposure to noise is more limited (insofar as noise is concerned) than a claimant who must avoid *concentrated* exposure to noise. In other words, a claimant that must avoid *concentrated* exposure to noise need not avoid *moderate* exposure to noise. Thus, by finding that Plaintiff must avoid *concentrated* exposure to noise, the ALJ effectively found that Plaintiff can tolerate *moderate* exposure to noise.[3] Thus, no apparent conflict exists between the noise limitation in Plaintiff's RFC and the VE's testimony that Plaintiff can perform jobs with a moderate noise level.

## CONCLUSION

For the reasons discussed above, it is **ORDERED and ADJUDGED** that Plaintiff's Motion [DE 11] is **DENIED** and Defendant's Motion [DE 12] is **GRANTED**. The Court will enter a separate Final Judgment **affirming** the final decision of the Commissioner.

**DONE AND ORDERED** in Fort Lauderdale, Florida on this 5th day of June 2025.

Jared M. Strauss
United States Magistrate Judge

---

[3] *Cf. Sims v. Comm'r of Soc. Sec.*, No. 3:12-CV-1262-J-MCR, 2013 WL 5567412, at *5 (M.D. Fla. Oct. 9, 2013) ("Form SSA–4734–BK, Physical Residual Functional Capacity Assessment, reveals that state agency physicians are given four choices to evaluate the severity of a claimant's environmental restriction: unlimited, avoid concentrated exposure, avoid even moderate exposure, and avoid all exposure. Accordingly, 'avoid concentrated exposure' is the term utilized and approved by the SSA and the Court finds no error in the ALJ's use of said term."); *see also Parr v. Kijakazi*, No. 3:20-CV-804-CWB, 2023 WL 2720814, at *12 (M.D. Ala. Mar. 30, 2023).